UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED M. VILLERY,<br><br>    Petitioner,<br><br>    v.<br><br>ANTHONY HEDGPETH, Warden,<br><br>    Respondent. | NO. CV 09-7496-GAF (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the petition, records on file, and the Report and Recommendation of the magistrate judge. Further, the Court has engaged in a *de novo* review of those portions of the Report to which Petitioner has objected. The Court accepts the findings and recommendation of the magistrate judge.

    The magistrate judge independently reviewed Grounds Two through Seven to determine whether the California Supreme Court's summary denial of the state habeas petition (Lodged Document ("LD") 6) was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent. (Report at 9 (citing *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (summary denial of state habeas petition before the California Supreme Court is

adjudication on the merits and entitled to deference)).)

Petitioner argues that the magistrate judge should have "looked through" the California Supreme Court's summary denial to the superior court's earlier decision on state habeas.[1] (Objections at 3 *et seq.*) The superior court denied Grounds Five through Seven on the merits. (LD 2.) Even if the court looked through to the superior court's decision, the outcome would be the same. With respect to Grounds Two through Four, the superior court applied a procedural bar. (*Id.*) Therefore, Petitioner argues the magistrate judge should have applied *de novo* review. However, Petitioner cited and attached the superior court's opinion to his state habeas petition before the California Supreme Court. (LD 5 at 6 & Exh. F.) The California Supreme Court denied the petition without citing any case involving procedural bars, as it commonly does when applying a procedural bar. 2009 Cal. LEXIS 9897 (Sept. 17, 2009). Treating the California Supreme Court's summary denial as a decision on the merits is supported by the Ninth Circuit. (Report at 9 n.3); *Trigueros v. Adams*, 658 F.3d 983, 990 (9th Cir. 2011) (California Supreme Court did not apply timeliness bar when the court had the question before it and did not cite to cases involving a timeliness bar). Nevertheless, this Court need not decide which standard of review should be applied because Grounds Two through Four fail even under *de novo* review.[2]

---

[1] The superior court denied Petitioner's state habeas petition in a brief written decision. (LD 2.) The California Court of Appeal and the California Supreme Court summarily denied Petitioner's habeas petitions. (LD 4, 6.)

[2] Petitioner's arguments on Ground Three border on the frivolous. (Report at 24.) On direct examination, Petitioner testified he had previously been convicted of a felony (receiving stolen property). (Supplemental Lodged Document ("SLD") 1 at 1038.) He intended to sell a pound of fake marijuana that looked like real marijuana. (*Id.* at 1039-40.) He sold the fake marijuana for $4,000. (*Id.* at 1049.) It was the biggest score Petitioner ever had. (*Id.* at 1050.) When the victims wanted to test it, Petitioner provided a separate half ounce of real marijuana that looked the same. (*Id.* at 1051-52.)

On cross-examination, Petitioner testified the fake marijuana looked like chronic, the best grade of marijuana. (*Id.* at 1065.) At the time, chronic sold for anywhere between $3,500 and $4,300 per pound. (*Id.* at 1076.) Petitioner did

In Ground Two, Petitioner argued that his counsel was prevented from cross-examining six of the victims regarding their "prior involvement in marijuana use or sales." (Petition at Exh. A-27-28.) The Report addressed each of the six witnesses.[3] (Report at 18-21.) In his objections, Petitioner argues that his counsel "was completely prevented from questioning any of the prosecution witnesses about the defense theory that the incident was a fraudulent drug transaction, rather than a robbery." (Objections at 31 (emphasis in original) (citing Exh. A at 27.) Petitioner's objections are without merit. The Report stated:

> Petitioner argues that, during the prosecution's case in chief, his counsel was not permitted to ask questions of six of the victims that went to his defense. Petitioner had not yet testified, and the questions at issue went only to whether people at the residence ever bought marijuana, not whether there was a transaction that evening to buy marijuana. The trial court's evidentiary rulings did not foreclose Petitioner from a meaningful opportunity to present a defense. Nor was Petitioner denied the opportunity to cross examine the witnesses.

(Report at 21.)

---

not buy a pound of chronic very often. (Id.) The prosecutor asked whether Petitioner had previously bought a pound of chronic, and the trial court overruled defense counsel's objection. (Id.) Petitioner testified that he sometimes would get it for close friends and made $100 or $200 as the middleman. (Id. at 1076-77.) Petitioner's argument that there were no permissible inferences the jury could draw from the evidence is meritless. The cross-examination was directly relevant to test Petitioner's testimony on direct examination concerning the alleged fake marijuana transaction and the biggest score Petitioner ever had.

[3] Petitioner notes that the Report, when addressing the cross-examination of one of the victims (Peter Wells), incorrectly stated that Petitioner's counsel said, "There will be an objection later," whereas it was the prosecutor who made the statement. (Objections at 34 (referring to Report at 19 (citing to SLD 1 at 627)).) Petitioner does not identify how the error is material to the Report's analysis, and this Court can discern none. The Report is corrected as follows: On page 19, line 10, the words "Defense counsel" are replaced with "The prosecutor".

3

This conclusion is equally applicable to all of the victims testifying during the prosecution's case-in-chief. Petitioner complains that the Report failed to address the limitation on cross-examination of Chris Ryden, another victim. (Objections at 35 (citing Petition, Exh. A at 28 & 59).) Ryden was asked whether "[m]ost of the guys were smoking weed that night." (SLD 1 at 747.) He said he did not remember. (*Id.*) When asked if he meant it did not happen or if he did not remember whether it happened, he responded, "It may have happened and I don't remember." (*Id.*) Counsel also asked Ryden whether the room smelled of marijuana, and Ryden's response was the same. (*Id.* at 747-48.) Counsel then asked, "Is that because you are there many times when weed is being used," and the prosecutor's objection based on relevance was sustained. (*Id.* at 748.)[4]

Petitioner objects that "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (citation omitted); Objections at 36. However, as the Report pointed out (Report at 17-18), *Van Arsdall* made clear that the Confrontation Clause does not prevent a trial judge from imposing "reasonable limits on such cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant." *Van Arsdall*, 475 U.S. at 679. The trial court permitted questioning of the victims concerning alcohol or drugs on the night of

---

[4] The other sustained objections to counsel's questions of Ryden are either irrelevant to Ground Two or based on the form of the question, or both. One objection was sustained on vagueness and involved cell phones (SLD 1 at 751); one was sustained because it was speculative (*id.* at 751); and one was sustained because it was argumentative (*id.* at 752).

4

the incident.[5] (Report at 18; SLD 1 at 278.) Petitioner has not shown that "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination."[6] *Van Arsdall*, 475 U.S. at 680.

Petitioner also complains that the trial court sustained hearsay objections to his counsel's questions to Detective Reynolds regarding his investigation into a LMU newspaper article that characterized the incident as narcotics related. The questions clearly asked for hearsay.[7] *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted.").

Petitioner objects to the Report's conclusions on Ground Four. At trial, defense counsel attempted to introduce the April 2005 issue of High Times magazine.[8] The trial court allowed only the magazine cover to show the

---

[5] For example, Wells testified there was marijuana on the coffee table during the incident that belonged to him. (SLD 1 at 617, 627.) It was possible people smoked the marijuana before and during the incident, but he did not remember. (*Id.* at 617.) Wells had been drinking alcohol. (*Id.* at 583.) Wells did not recall anyone calling to ask him about coming over just prior to the incident. (*Id.* at 610.) Ryden's testimony, as another example, is discussed above.

[6] Petitioner also argues that under *de novo* review Ground Two should be analyzed under the five-part test in *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004); *compare Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (rejecting five-part test applied in *Chia* on deferential federal habeas review of decision to exclude evidence under state evidentiary rule). Application of the *Chia* test would not change the outcome.

[7] Petitioner's argument that his counsel was not asking for hearsay is not well taken. Reynolds testified that the author of the newspaper article would not reveal her sources and he had no other leads. (SLD 1 at 228-31.) Petitioner cites Reynolds' police reports, which Petitioner attached to his motion to expand the record. The reports confirm that counsel's questions called for hearsay. (*See* Exh. 6 at 2 to Motion to Expand the Record.)

[8] Petitioner attached the High Times evidence to his motion to expand the record. (*See* Exhs. 9-10 & Supplemental Lodging.)

magazine's existence, but excluded the remainder because it was 2-1/2 to 3 years after the fact and contained inadmissible hearsay. (Report at 25.) Petitioner argues he was deprived of his constitutional rights because this "critical" evidence would have corroborated that fake marijuana was available for purchase through the magazine. As defense counsel pointed out, however, no one disputed that one could buy fake marijuana through High Times. (Report at 25; SLD 1 at 1202.) Instead, the prosecutor argued that Petitioner's testimony about the scam was not credible. Petitioner's trick of bringing a separate half ounce of real marijuana would not have fooled any dealer who worked with the type of volume Petitioner claimed, and Wells would not have paid $4,000 in cash to a seller with whom he had no prior experience without better proof. (*Id.* at 1179-80.) The prosecutor also argued that no one could locate Mike Ryan, who allegedly sold Petitioner the fake marijuana,[9] or Fred, who allegedly gave "Pete's" name and number to Petitioner. (*Id.* at 1180-81.) The prosecutor further argued that it was not credible that "Fred" never told Petitioner that Pete was upset about losing $4,000 if the transaction actually occurred as Petitioner claimed. Petitioner has not shown a constitutional violation.

In Ground Five, Petitioner argued ineffective assistance of counsel. Petitioner claimed his counsel was ineffective because he failed to recall witnesses Nelson and Wells, two of the victims of the robbery. The Report rejected those claims, both with respect to deficiency and prejudice. (Report at 27.) In his objections, Petitioner argues that Nelson and Wells were just "examples" and that counsel was ineffective because he failed to "recall any of the prosecution's witnesses, following petitioner's testimony."[10] (Objections at 48

---

[9] Petitioner did not claim to have purchased the fake marijuana through High Times.

[10] Petitioner includes Detective Reynolds. However, Petitioner cannot show prejudice for the reasons already discussed above.

6

(emphasis in original).) Petitioner argues there could be no harm in forcing the witnesses to continue to lie. (Objections at 48-49.) However, counsel could reasonably conclude that there was something to lose by giving the victims an opportunity to refute Petitioner's testimony and repeat their version of events. Petitioner has not shown deficient performance or a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Harrington v. Richter*, 131 S. Ct. 770, 791-92, 178 L. Ed. 2d 624 (2011); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (rejecting "nothing to lose" standard); (Report at 27-28.)

Petitioner also argues that the Report failed to address two other claims of ineffective assistance. (Objections at 52.) The first relates to Ground Two. Petitioner argues that had his counsel "made a more specific offer of proof," the court would have permitted him to question the witnesses about the defense's theory. (*Id.*) Petitioner does not state what offer of proof his counsel should have made, particularly before Petitioner testified. Petitioner's claim is wholly speculative. The second subclaim is that counsel failed to lay a proper foundation to have the High Times magazine admitted into evidence. This claim relates to Ground Four, the exclusion of the magazine based on hearsay. Petitioner cannot show deficiency or prejudice for the reasons discussed above.

Petitioner objects to the Report's finding that his request to expand the record should be denied based on *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). (Objections at 55.) Similarly, Petitioner argues he is entitled to an evidentiary hearing. (*Id.* at 59.) Petitioner's motion to expand the record stated that the exhibits were necessary to rebut the Respondent's claims and defenses, and to assist the Court in deciding whether to hold an evidentiary hearing. This Court has considered the exhibits and discussed some of them above. The material does not enable Petitioner to establish his grounds for relief.

7

1  His requests to expand the record and for an evidentiary hearing are DENIED.
2  *See Schriro v. Landrigan*, 550 U.S. 465, 475, 127 S. Ct. 1933, 167 L. Ed. 2d 836
3  (2007) (district court acts within its discretion in denying evidentiary hearing when
4  petitioner cannot develop factual record that would entitle him to federal habeas
5  relief); *Runningeagle v. Ryan*, 686 F.3d 758, 766 n.2 (9th Cir. 2012) (declining to
6  expand the record).
7      Petitioner's remaining objections have no merit.
8      IT IS ORDERED that judgment be entered denying the petition and
9  dismissing this action with prejudice.

11  DATED: November 12, 2012

                          GARY A. FEESS
                          United States District Judge